**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ASHLEY FORD, et al., | : | CASE NO. 5:17-cv-000049 |
| | : | |
| | : | JUDGE SARA LIOI |
| | : | |
| Plaintiffs, | : | |
| vs. | : | |
| | : | |
| PENNSYLVANIA HIGHER EDUCATION | : | |
| ASSISTANCE AGENCY, et al., | : | |
| | : | |
| | : | |
| Defendants. | : | |

## MOTION OF DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY TO DISMISS SECOND AMENDED COMPLAINT

Now comes Defendant Pennsylvania Higher Education Assistance Agency ("PHEAA"), by and through counsel, and moves this Court pursuant to Rule 12(b)(6) to dismiss with prejudice Counts I and III of Plaintiffs' Second Amended Complaint as to PHEAA. A Memorandum in Support is attached hereto.

Respectfully submitted,

*/s/ Drew H. Campbell*
Drew H. Campbell      (Ohio # 0047197)
David K. Stein          (Ohio # 0042290)
Kara Herrnstein         (Ohio # 0088529)
Bricker & Eckler LLP
100 S. Third Street
Columbus, Ohio 43215
Telephone:  614-227-2300
Fax:  614-227-2390
dcampbell@bricker.com
dstein@bricker.com
kherrnstein@bricker.com
*Counsel for Defendant Pennsylvania Higher*
*Education Assistance Agency*

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS............................................................................................. i

TABLE OF AUTHORITIES ...................................................................................... ii

ISSUES PRESENTED...............................................................................................v

SUMMARY OF ARGUMENT ..................................................................................v

I.      INTRODUCTION ...........................................................................................1

II.     STATEMENT OF FACTS ..............................................................................2

        A.      The Agreement To Serve. .................................................................2

        B.      The Servicing Agreement. ................................................................4

        C.      Plaintiffs' Breach. ............................................................................6

III.    STANDARD OF REVIEW .............................................................................8

IV.     LAW AND ARGUMENT ...............................................................................9

        A.      Plaintiffs Cannot State A Claim For Unjust Enrichment (Count III). ..................10

                1.      The underlying contracts cover the same subject matter as the
                        unjust enrichment claim. ...........................................................11

                        a.      The Agreement To Serve. .............................................12

                        b.      PHEAA's Servicing Agreement. ..................................14

                2.      Enforcement of a contract is not "unjust."................................17

                3.      PHEAA was not "enriched" by Plaintiffs. .................................18

        B.      Plaintiffs Fail To Plead Civil RICO (Count I). ..............................19

                1.      Plaintiffs fail to satisfy their pleading obligation....................20

                2.      A mere breach of contract cannot constitute mail or wire fraud..............22

                3.      PHEAA did not participate in or manage the DOE's conduct..................24

V.      CONCLUSION .............................................................................................25

CERTIFICATE OF COMPLIANCE.........................................................................27

CERTIFICATE OF SERVICE .................................................................................28

i

# <u>TABLE OF AUTHORITIES</u>

Page

## <u>CASES</u>

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ................................................................. 8

*Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151 (6th Cir. 1987) ....................... 23

*C & L Ward Bros. v. Outsource Solutions, Inc.*, 2012 U.S. Dist. LEXIS 109068
    (E.D. Mich. August, 2012).......................................................................... 23

*C. Thorrez Indus., Inc. v. LuK Transmissions Systems, LLC*,
    2010 U.S. Dist. LEXIS 34734 (April 8, 2010) (Lioi, J.) ............................... 11, 12, 14, 17

*Carrier Corp. v. Outokumpu Copper Franklin, Inc.*, 673 F.3d 430 (6th Cir. 2012) .................... 22

*Deel v. Wells Fargo Bank, N.A.*, No. 5:15-cv-2042, 2016 U.S. Dist. LEXIS 44651
    (N.D. Ohio Apr. 1, 2016) ............................................................................. 21

*Developer's Mortg. Co. v. Transohio Sav. Bank*, 706 F. Supp. 570 (S.D. Ohio 1989)................. 4

*Ed Story & Sons v. Francis*, 1996-Ohio-194, 75 Ohio St. 3d 433, 662 N.E.2d 1074 ........... 14, 15

*Gator Dev. Corp. v. VHH, Ltd.*, 5th Dist. Hamilton No. C-080193, 2009-Ohio-1802................. 23

*Grange Mut. Cas. Co. v. Mack*, 290 F. App'x 832 (6th Cir. 2008) ............................... 21

*Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 465 N.E.2d 1298 (1984).................... 10, 18

*Hilton Sea, Inc. v. DMR Yachts, Inc.*, 750 F. Supp. 35 (D. Me. 1990) ................................. 23, 24

*Hofstetter v. Fletcher*, 905 F.2d 897 (6th Cir. 1988) ..................................................... 21

*JC & F Invs. v. Householder*, 3rd Dist. No. 17-08-11, 2008-Ohio-5313 ...................................... 18

*Kachaylo v. Brookfield Township Bd. Of Trustees*, 778 F. Supp. 2d 814 (N.D. Ohio 2011) ......... 8

*Kevelighan v. Trott & Trott, P.C.*, 771 F. Supp. 2d 763 (E.D. Mich. 2010) ............................... 23

*King v. The Hertz Corp.*, 2011 U.S. Dist. 35610 (N.D. Ohio 2011)......................................... 9, 18

*Kovach v. Access Midstream Partners, L.P.,* No. 5:15-cv-616, 2016 U.S. Dist. LEXIS
    37882 (N.D. Ohio Mar. 23, 2016) ............................................................... 20

*Lake Ridge Acad. v. Carney*, 66 Ohio St. 3d 376, 613 N.E.2d 183 (1993) .................................. 16

*Lawson v. Am. Sec. Ins. Co.*, File No. 88-CV-10280-BC, 1989 U.S. Dist.
    LEXIS 18981 (E.D. Mich. Mar. 29, 1989) ...................................................... 16

*Mengel Co. v. Nashville Paper Prods. & Specialty Workers Union*,
221 F.2d 644 (6th Cir. 1955) ......................................................................... 2

*Michalak v. LVNV Funding Inc.*, 2014 U.S. Dist. LEXIS 57718 (N.D. Ohio 2014) ............... 8, 21

*Mixon v. Ohio*, 193 F.3d 389 (6th Cir. 1999) ................................................................ 9

*Morda v. Klein*, 865 F.2d 782 (6th Cir. 1989) ............................................................ 20

*Phelps v. McClellan*, 30 F.3d 658 (6th Cir. 1994) ...................................................... 10

*Reves v. Ernst & Young*, 507 U.S. 170, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993) ............. 20, 24

*Rose v. Rose*, 6th Dist. Ottawa Court of Appeals No. 90-OT-023, 1991 Ohio App.
LEXIS 5911 (Dec. 13, 1991) ..................................................................... 18

*Shona Corp. v. AMKO Internat'l.*, 763 F. Supp. 919 (S.D. Ohio 1991) ............................... 18, 19

*Stone v. Kirk*, 8 F.3d 1079 (6th Cir.1993) .................................................................. 24

*Thomas & King, Inc. v. Jaramillo*, No. 08-191-JBC, 2009 U.S. Dist. LEXIS 18432
(E.D. Ky. Mar. 9, 2009) ............................................................................. 16

*United States v. Prince*, 214 F.3d 740 (6th Cir. 2000) .................................................. 21

*Weiner v. Klais & Co.*, 108 F.3d 86 (6th Cir. 1997) ...................................................... 9

*Wuliger v. Mfrs. Life Ins. Co. (USA)*, 567 F.3d 787 (6th Cir. 2009) ............................... 11

**STATUTES**

18 U.S.C. § 1962(c) ............................................................................................... 20

18 U.S.C. §§ 1341 and 1343 ................................................................................... 20

20 U.S.C. § 1070g-2 ............................................................................................. 2

20 U.S.C. § 1070g-2(b) ......................................................................................... 3

20 U.S.C. § 1070g-2(b)(1)(A) ................................................................................ 3

20 U.S.C. § 1070g-2(b)(1)(D) ............................................................................... 15

20 U.S.C. § 1070g-2(c) ......................................................................................... 17

20 U.S.C. § 1097 ................................................................................................. 16

24 P.S. §§ 5101 – 5199.9 ...................................................................................... 1

## RULES

Civ.R. 8 ................................................................................................................................. 20

Fed.R.Civ.P. 10(c) ................................................................................................................. 9

## REGULATIONS

34 C.F.R. § 686 ....................................................................................................................... 3

34 C.F.R. § 686.12(e) ........................................................................................................... 15

34 C.F.R. § 686.40 ................................................................................................................. 3

34 C.F.R. § 686.40(b) .......................................................................................................... 15

34 C.F.R. § 686.40-43 ........................................................................................................... 5

34 C.F.R. § 686.43 ................................................................................................................. 4

## TREATISES

Ohio Jury Instructions, CV 501.39 ...................................................................................... 10

## OTHER AUTHORITIES

18 O.Jur.3d *Contracts* § 343, at 271 ................................................................................ 19

## ISSUES PRESENTED

1.  The conversion of Plaintiffs' TEACH Grant was the direct result of their failure to meet the contractual deadline to certify their ongoing compliance with the terms of their contracts—which are inseparable from the allegations giving rise to lawsuit. Moreover, any compensation PHEAA received for servicing the converted TEACH Grants comes from the DOE, not from Plaintiffs.

    Can Plaintiffs state a claim for unjust enrichment where (1) express contracts govern the very dispute at issue; (2) Plaintiffs breached their contracts with the DOE, triggering the conversions (the conversions were not "unjust"); and (3) the DOE paid PHEAA for servicing the converted Grants (PHEAA was not "enriched" by Plaintiffs)?

2.  Plaintiffs assert only rote recitals—not allegations of fact—to support the elements of their RICO claim, and even those are contradicted by other allegations in the Second Amended Complaint and the underlying contracts. In addition, Plaintiffs rely on mail and wire fraud as the predicate acts to support their claim for liability under civil RICO, based solely PHEAA's conversion of their TEACH Grants, which they allege was done in breach of their DOE contracts. But a breach of contract, even if part of an illegal scheme, does not constitute fraud. Finally, Plaintiffs allege that PHEAA is the "culpable person" associated with the RICO enterprise. Yet that allegation, which requires a showing that PHEAA could direct the affairs of the DOE, is contradicted by the very contracts they rely on to support their other claims.

    Can Plaintiffs state a claim under civil RICO against PHEAA based on nothing more than an alleged breach of contract (by someone else) to support their predicate acts of wire and mail fraud? Can Plaintiffs state a RICO claim when it was a contractual impossibility for PHEAA to direct the management of the DOE's affairs?

## SUMMARY OF ARGUMENT

The TEACH Grant was created by an Act of Congress in 2008 as a complement to the federal government's various student financial assistance programs. Meritorious federal student loan borrowers receive aid in the form of a grant, so long as those borrowers agree to serve as full-time teachers for four years in certain designated "high need" areas *and* meet other program requirements mandated by Congress. Those congressional mandates include submission of annual certifications executed by the recipient and the chief administrative officer of the assigned school district in which they teach. 20 U.S.C. § 1070g-2. The Act requires recipients to execute an Agreement to Serve and mandates repayment of the aid—with interest—in the event of

noncompliance with any of these requirements.  The program is managed by the Department of Education ("DOE").

Plaintiffs each received TEACH Grants as part of this program.  But, as they allege in their Second Amended Complaint, they failed to abide by the specific requirements imposed by Congress and in their Agreements to Serve.  Specifically, Plaintiffs concede that they failed to meet their obligation to timely provide their written certification of compliance.  Due to this failure, their respective Grants were converted to interest-bearing loans by the DOE, just as required by both Congress and the contracts Plaintiffs signed.

Plaintiffs, however, allege that their Agreements to Serve were breached by the DOE when PHEAA, in its capacity as a servicer, converted their TEACH Grants into interest-bearing loans.  Plaintiffs allege that PHEAA was unjustly enriched by the conversion of their TEACH Grants to loans because it received "increased profits based on increased loan balances."  But the two contracts—the Agreement To Serve between Plaintiffs and the DOE, and the servicing agreement between PHEAA and the DOE—address the very dispute at issue here, thus foreclosing any claim for unjust enrichment.  In addition, there is nothing "unjust" about enforcing the terms of Plaintiffs' contracts.  Finally, Plaintiffs did not "enrich" PHEAA; the only payments PHEAA received came from the DOE, not from Plaintiffs.  Count III should be dismissed.

Plaintiffs claim that PHEAA violated the Racketeer Influenced Corrupt Organizations Act ("RICO") when it converted their TEACH Grants to loans, and committed mail and wire fraud—predicate acts—because it did so "fraudulently."  But Plaintiffs' reliance on labels and conclusory allegations fails to satisfy the heightened pleading standard under Federal Rule 9(b), as required by the Sixth Circuit.  Moreover, a breach of contract (by someone else), even if part

of an allegedly illegal scheme, does not constitute mail or wire fraud.   Count I should be dismissed.

## I.     <u>INTRODUCTION</u>

This is the Plaintiffs' third attempt to plead claims against Defendant Pennsylvania Higher Education Assistance Agency ("PHEAA").[1]  PHEAA filed motions dismiss the first two complaints, to which the Plaintiffs never responded.  Instead, each motion has been followed by an amended complaint—none of which cured the legal deficiencies at the heart the Plaintiffs' case.

In their third complaint, like the first two, Plaintiffs each admit that they breached their contracts with the United States Department of Education (the "DOE") when they failed to timely provide the required certifications of their continuing compliance with the terms of their TEACH Grants.  Their Grants were then converted to interest-bearing loans, pursuant to the express terms of the Plaintiffs' contracts with the DOE.

At first, Plaintiffs tried to place the blame solely on PHEAA.  In their original Complaint, Plaintiffs accused PHEAA of breaching their contract with the DOE.  But PHEAA is merely a servicer the Grants on behalf of the DOE—it was not a party to, and could not breach, Plaintiffs' contracts.

In response, the Plaintiffs amended their complaint and joined the DOE as a defendant. In the First Amended Complaint, the Plaintiffs renewed the same defective claims against PHEAA for unjust enrichment and, oddly enough, the Racketeer Influenced and Corrupt Organizations Act ("RICO").  PHEAA moved to dismiss—on the same grounds as before— arguing that a mere breach of contract (to which PHEAA was not even a party) cannot provide the basis for the predicate act of mail fraud.  Nor did the Plaintiffs adequately allege that PHEAA was a "culpable person" because, as a servicer, there were no allegations that it managed the

---

[1] PHEAA is a statutorily-created instrumentality of the Commonwealth of Pennsylvania.  24 P.S. §§ 5101 – 5199.9.

affairs of the DOE.  In addition, the Plaintiffs' admitted failure to abide by their contracts with the DOE was the cause of the TEACH Grant conversions, not any malfeasance by PHEAA.

The Plaintiffs again chose not to respond to the motion, and instead amended their complaint once more.  Now, in their third attempt, they have added eleven additional Plaintiffs, but the substantive allegations against PHEAA remain exactly the same.

This Second Amended Complaint confirms that Plaintiffs' pleading problems are insurmountable.  Each of the Plaintiffs admits that they breached their contracts with the DOE, which now has every right to enforce the conversion terms.  As the DOE's servicer, PHEAA is contractually bound to initiate the conversion of the Grants into loans on the DOE's behalf. Under those contracts, conversion of Plaintiffs' Grants to interest-bearing loans is the express consequence of their breach.  Without any underlying wrongful conduct by PHEAA, there is simply no basis for an unjust enrichment or a RICO claim.

Plaintiffs have already tried to fix these problems twice before.  But the amendments only underscore the legal impossibility of their claims.  The Second Amended Complaint is still hopelessly flawed, and it cannot be fixed.  After three tries, Plaintiffs' claims against PHEAA should be dismissed with prejudice.

## II.  STATEMENT OF FACTS[2]

### A.  The Agreement To Serve.

Congress established the Teacher Education Assistance for College and Higher Education (TEACH) Grant program pursuant to the College Cost Reduction and Access Act.  20 U.S.C. § 1070g-2.

---

[2] The statement of facts is derived from the Second Amended Complaint, the attached exhibits, and the agreements that are referred to in the Complaint.  All allegations are presumed to be true, except those that are contradicted by the exhibits or referenced agreements.  *Mengel Co. v. Nashville Paper Prods. & Specialty Workers Union*, 221 F.2d 644, 647 (6th Cir. 1955) ("If inconsistent with the allegations of the complaint, the exhibit controls.")

Students who qualify for TEACH Grants, like Plaintiffs, enter into a contract with the DOE called an "Agreement To Serve." SAC at ¶ 4, 175 & Exs. A and B (Doc. 13-2, PageID # 276, 299 & Doc 13-3 and Doc. 13-4); *see also* 20 U.S.C. § 1070g-2(b). The Agreement To Serve, which is based on the statutory requirements set forth in 20 U.S.C. § 1070g-2(b) and the regulatory requirements set forth in 34 CFR § 686, contains the terms and conditions that Grant recipients must perform. SAC at ¶¶ 5, 175-78 (Doc. 13-2, PageID # 277, 299).

To qualify for the TEACH Grant, Plaintiffs "*must* fulfill a service obligation by teaching full time for a total of at least four school years within Eight years after completing the program for which [they] receive[d] the TEACH Grant." SAC Exs. A and B at § (C)(1)(A) (Docs. 13-3 and 13-4, PageID # 315, 328) (emphasis added); *see also* 20 U.S.C. § 1070g-2(b)(1)(A).

But that is not the only requirement.

Section Two of the Agreement To Serve sets forth a series of mandatory reporting obligations designed to confirm Plaintiffs' continuing compliance and entitlement to the Grant:

> I *must* confirm in writing within 120 days after I have completed . . . a program for which I received a TEACH Grant that:
>
>> I am employed as a full time teacher in accordance with the terms and conditions described above . . .
>
> I *must* provide the [DOE] with documentation of that teaching service on a form that will be available from the [DOE]. This form *must* be certified by the chief administrative officer of the school where I am teaching, and *must* confirm that for the specified year [I satisfied each of the terms and conditions of the grant.]

SAC Ex. B at § (C)(2)(A), (B) (Doc. 13-4, PageID # 331) (emphasis added); *see also* 34 CFR § 686.40.

Section 4, entitled "Requirement to repay for failure to complete service obligation or to meet other TEACH Grant requirements," states:

> A. Any TEACH Grant that I receive *will* be converted to a Direct Unsubsidized Loan that I *must* repay in full, with interest, to the [DOE] under any of the following conditions:

. . . I do not actively confirm to the [DOE] at least once each year that I intend to satisfy my service obligation.

*Id.* at § (C)(4) (emphasis added); 34 CFR § 686.43.

The DOE takes these promises very seriously. The Agreement To Serve expressly warns, in the very first paragraph of the contract, that "[a]ny person who makes a knowingly false statement or misrepresentation on this form will be subject to penalties . . . under the U.S Criminal Code and 20 U.S.C. 1097," which prohibits false statements in the procurement of federal student loans. SAC Exs. A and B at 1 (Docs. 13-3, 13-4, Page ID # 314, 327).

The terms and conditions of the Agreement To Serve are established by Congress, pursuant to statute and the Code of Federal Regulations. PHEAA is not a party to the Agreement To Serve.

### B. The Servicing Agreement.

The DOE hired PHEAA to service TEACH Grants, commencing in July 2013. SAC at ¶ 3 (Doc. 13-2, PageID # 276). A true and accurate copy of the Servicing Agreement between PHEAA and the DOE is attached as Ex. 1.[3]

PHEAA's obligations under the Servicing Agreement closely track Plaintiffs' obligations under the Agreement To Serve. The Servicing Agreement states that the "terms and conditions provided herein are for services, including accepting, processing, and servicing TEACH Grants, in accordance with the requirements described in Attachment B –TEACH Grant Requirements and the regulations found at 34 CFR 686." Among the mandatory and non-discretionary obligations imposed on PHEAA by the DOE under the Servicing Agreement are:

---

[3] A contract that is incorporated by reference into a complaint may be considered "part of the pleadings" on a motion to dismiss. *Developer's Mortg. Co. v. Transohio Sav. Bank*, 706 F. Supp. 570, 583 n.31 (S.D. Ohio 1989).

> If the applicant does not carry out the service obligation, the sum of the amounts of any TEACH Grants received *will* be converted into a Direct Unsubsidized Loan (TEACH) and *will* be subject to repayment, along with any and all interest accrued from the date of the grant award. (Servicing Agreement at Att. B (emphasis added));
>
> Upon completion of each academic year of service, the grant recipient *must* submit certification by a chief administrative officer of the school or education service agency. (*Id.* at § 3.12 (emphasis added));
>
> Servicer *will* convert TEACH Grants into Direct Unsubsidized Loans when a Grant recipient: Completes a TEACH Grant eligible program but fails to certify annually intention to satisfy the service agreement. (*Id.* at § 4.3.2, 4.3.4 (emphasis added)).

These provisions mirror the requirements as stated in the Code of Federal Regulations. *See* 34 CFR § 686.40-43.

Thus, in its role as servicer, PHEAA has no discretion but to enforce the mandatory reporting requirements of the Plaintiffs' contracts—which themselves are required by both federal statute and regulation. In the event a breach, PHEAA is required to "initiate the conversion of a grant into the loan." SAC at ¶ 181 (Doc. 13-2, PageID # 300).

The DOE retains the right to make the final determination whether the conversion was correct:

> [The DOE] has also established a process whereby TEACH grant [sic] recipients may appeal to the servicer or [the DOE] to dispute a conversion to a loan, and [the DOE] will reverse it if servicer error is found.

GAO-15-314, at 31 (cited in the SAC at page 28, n. 14) (Doc. 13-2, PageID # 301).

Thus, the determination of what constitutes a breach of the Agreement To Serve, whether a breach has occurred, and whether conversion of the Grant to a loan is appropriate is both directed to and finally determined by the DOE.

### C.    **Plaintiffs' Breach.**

Each Plaintiff admits that they failed to satisfy their obligations to the DOE under the Agreement to Serve.

Ashley Ford and David West were the original Plaintiffs in this case.   Ashley Ford entered into her contract with the DOE for a TEACH Grant on September 2, 2009, three years before PHEAA entered into its Servicing Agreement with the DOE.   SAC at ¶ 14 & Ex. A (Docs. 13-2, 13-3, PageID # 279).   David West entered into his contract with the DOE on December 20, 2010, two-and-a-half years before PHEAA entered into the Servicing Agreement with the DOE.   SAC at ¶ 40 & Ex. B (Docs. 13-2, 13-4, PageID # 283).

Plaintiffs Ford and West both certified, subject to criminal penalty, that their promises to perform were true, and that they made no misrepresentations to the United States Government. SAC Exs. A and B at 1) (Docs. 13-3, 13-4, PageID # 314, 327).   Pursuant to their contracts, both Plaintiffs were required to comply with all of the terms and conditions, or their TEACH Grant would be converted to an interest-bearing loan.   SAC at ¶¶ 176-78, Exs. A and B at § (C)(4)(A) (Docs. 13-2, 13-3, 13-4, PageID # 299, 318, 333).   If the conversion were to happen, Plaintiffs agreed to pay back the full amount of the Grant, with interest calculated from the date the Grant was originally disbursed.   SAC Exs. A and B at § (C)(4)(B) (Docs. 13-3, 13-4, PageID # 318, 333).

In 2014, Plaintiff Ashley Ford failed to properly certify her compliance with the terms of her TEACH Grant.   SAC at ¶¶ 26-31 (Doc. 13-2, PageID # 280-81).   As a result, her Grant was converted to a loan in December 2014.   *Id.* at ¶ 31 (Doc. 13-2, PageID # 281).

Plaintiff David West likewise admits that he failed to properly certify his compliance with the TEACH Grant, and his loan was converted to a loan.   *Id.* at ¶ 53 (Doc. 13-2, PageID # 284).

The eleven new Plaintiffs in the Second Amended Complaint fare no better. Not one of these Plaintiffs allege that they abided by the terms of their Agreements to Serve. To the contrary, just like Ashley Ford and David West, each Plaintiff admits their own noncompliance with their contractual certification requirement to the DOE:[4]

| Plaintiff | Admitted Noncompliance |
|---|---|
| Ashley Ford | Missed certification deadline. SAC at ¶¶ 26-31. |
| David West | Submitted an incomplete and unsigned certification, and then missed certification deadline. *Id.* at ¶ 94-96. |
| Maggie Webb | Missed certification deadline. *Id.* at ¶ 64. |
| Benjamin Owen | Missed certification deadline. *Id.* at ¶ 73. |
| Marisa Burns | Missed certification deadline. *Id.* at ¶ 79. |
| Jeremy Zimmerman | Missed certification deadline. *Id.* at ¶ 88. |
| Alexandra Bolden | Submitted an unsigned certification, and then missed certification deadline. *Id.* at ¶ 94-96. |
| Melinda Hopkins (Melinda Morales) | Did not submit certification at all, or failed to effectively submit certification. *Id.* at ¶ 102-04.[5] |

---

[4] Each Plaintiff either directly alleges that he or she missed the certification deadline or omitted a signature, or alleges that Defendants converted his or her Grant for an "alleged" failure to meet these requirements, but fails to allege his or her own compliance.

[5] The allegations regarding Plaintiff Melinda Hopkins are especially vague. She alleges that she faxed her certification paperwork to PHEAA, and that PHEAA failed to send her "any notification that they had not received it." *Id.* at 102-03. But she then alleges that she "[i]nstead" received "paperless communications" from PHEAA, but she does not allege the content or timing of those communications. *Id.* at 104. She also does not allege whether her attempted fax was sent before or after her deadline, whether it complied with the TEACH Grant requirements, or whether it was successfully transmitted. PHEAA interprets these confusing allegations to mean that Defendant Melinda Hopkins unsuccessfully attempted to submit a certification, which may or may not have complied with the TEACH Grant requirements.

| Samantha Binnie | Did not submit certification at all. *Id.* at ¶ 111. |
|---|---|
| Alyssa Pandolfi | Did not submit certification at all. *Id.* at ¶ 114-22. |
| Lindsey Jones | Missed certification deadline. *Id.* at ¶ 127. |
| Linda Werner | Did not submit certification at all. *Id.* at ¶ 130-36. |
| Sarah Repass Freund | Missed certification deadline. *Id.* at ¶ 140-43. |

## III.  STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Kachaylo v. Brookfield Township Bd. Of Trustees*, 778 F. Supp. 2d 814, 817 (N.D. Ohio 2011) (citations omitted).  To do so, the plaintiff must allege facts sufficient to support each element of her claims for relief. *Id.* at 818.

In evaluating the sufficiency of a complaint, "[t]he Court must take all well-pled allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff." *Id.* at 817.  "The Court need not, however, accept a complaint's allegations as true based on threadbare recitations of a cause of action's elements, supported by mere conclusory statements." *Michalak v. LVNV Funding Inc.*, 2014 U.S. Dist. LEXIS 57718, *3 (N.D. Ohio 2014) (citations omitted).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Kachaylo* 778 F. Supp. 2d at 817, citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (emphasis added).

Further, a plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *King v. The Hertz Corp.*, 2011 U.S. Dist. 35610, *4 (N.D. Ohio 2011). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* The Court will "not accept as true . . . unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999).

Finally, a court "may look beyond the allegations contained in the complaint to exhibits attached to or otherwise incorporated in the complaint, all without converting a motion to dismiss to a motion for summary judgment." *King*, 2011 U.S. Dist. LEXIS at *4, citing Fed. R. Civ. P. 10(c), *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). "Ultimately, this determination is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Weiner*, 108 F.3d at 1950.

## IV. <u>LAW AND ARGUMENT</u>

Plaintiffs assert claims against PHEAA for violation of RICO (Count I) and for unjust enrichment (Count III). They also allege a breach of contract claim only against co-defendant DOE, alleging that their TEACH Grants were improperly converted under their Agreements to Serve (Count II).

As discussed below, both the unjust enrichment and RICO claims against PHEAA are derivative of the breach of contract claim against the DOE. That is because the DOE's alleged breach of Plaintiffs' Agreements to Serve, and the resultant conversion of Plaintiffs' TEACH Grants into loans, provides the core "wrongdoing" at the heart of each of the claims in the Second Amended Complaint. But, as set forth below, Plaintiffs are the only ones who breached the Agreement to Serve.

While there are other flaws in both the RICO and unjust enrichment claims that are equally fatal, the contract claim is central to both. As goes that claim, so go the rest.

A.      **Plaintiffs Cannot State A Claim For Unjust Enrichment (Count III).**

Under Ohio law, [6] the elements of unjust enrichment are:  "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment."  *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183, 465 N.E.2d 1298 (1984).  *See also* Ohio Jury Instructions, CV 501.39.

In their original complaint, Plaintiffs brought a claim against PHEAA for the alleged breach of their contract with the DOE.  (Compl. at ¶ 133, *et seq.*) (Doc. 1, PageID # 23).  They wisely dropped this claim in their Amended Complaint and in their Second Amended Complaint because, as PHEAA pointed out in its earlier motions to dismiss, it is not a party to the contract with DOE and thus could not be sued for its breach.  Motion to Dismiss at 7-9 (Doc. 6, PageID # 96-99).

But Plaintiffs' claim for unjust enrichment remains fatally flawed, for all for the same reasons PHEAA pointed out in its previous motions.  *Id.*  Indeed, the conversion of Plaintiffs' TEACH Grants was based on enforcement of the terms of two contacts: Plaintiffs' Agreements to Serve with DOE and PHEAA's servicing contract with DOE.

The Second Amended Complaint thus triggers three independent legal defenses to this claim:

- First, there can be no claim for unjust enrichment where there is an express written contract covering the same subject matter.

- Second, and separate from the first argument, there is nothing unjust about enforcing the terms of a contract.

---

[6] Federal courts sitting in diversity apply the substantive law of the forum state.  *Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir. 1994).

- Third, and independent of the first two arguments, PHEAA's alleged benefit—compensation for servicing the converted loan—was conferred by the DOE, not Plaintiffs.  Thus, there is no causal connection between their loss and PHEAA's alleged gain.

These defenses are addressed below.

### 1.   The underlying contracts cover the same subject matter as the unjust enrichment claim.

A claim for unjust enrichment is an equitable claim based on a legal fiction where courts will imply a "contract" as a matter of law. *See Wuliger v. Mfrs. Life Ins. Co. (USA)*, 567 F.3d 787, 799 (6th Cir. 2009).  This Court recently observed that:

> An implied-in-law, "quasi-contract," however, is neither necessary nor appropriate when an express contract governs the dispute between the parties.  "Where, however, there is an enforceable express or implied-in-fact contract that regulates the relations of the party or that part of their relations about which issues have arisen, *there is no room for quasi-contract*." 1-1 CORBIN ON CONTRACTS § 1.20 (emphasis added).

*C. Thorrez Indus., Inc. v. LuK Transmissions Systems, LLC*, 2010 U.S. Dist. LEXIS 34734 (April 8, 2010) (Lioi, J.).

In *LuK*, the plaintiff attempted to circumvent a forum selection clause by arguing that it applied only to its claim for breach of contract, but not to its claim for unjust enrichment.  *Id.* at *13.  This Court rejected the argument, noting that the claim for unjust enrichment was "inseparable" from the claim for breach of contract:

> Any evaluation of this claim . . . will require a court to determine whether a valid contract exists, and whether the parties fulfilled their duties and obligations under the contract, a decision which the forum selection clause requires to be made in Wayne County.

*Id.* at **16-17 (citations omitted).

The same thing is true here.  The gravamen of the Plaintiffs' claims is that they "performed or substantially performed all material terms of their obligations under the contract," and that the "[DOE], through PHEAA, breached its contractual obligations by improperly

converting the grants to interest-bearing loans." SAC at ¶¶ 252-253 (Count II (Breach of Contract – Against the Department of Education)).

As discussed below, it is clear that written "contract[s] that regulate[] the relations of the part[ies] *or that part of their relations about which issues have arisen*" are inseparable from Plaintiffs' claims. *LuK*, 2010 U.S. Dist. LEXIS 34734, at *16 (emphasis added).

### a. The Agreement To Serve.

The Agreement To Serve, a contract between Plaintiffs and the DOE, spells out the reciprocal obligations between the Plaintiffs and the DOE. SAC Exs. A and B (Doc. 13-2, PageID # 299, and Docs. 13-3, 13-4).

In accepting the TEACH Grant from the DOE, Plaintiffs were required to satisfy certain teaching obligations and "to submit evidence of such employment in the form of a certification by the chief administrative officer of the school upon completion of each year of such service." SAC ¶¶ 177 (Doc. 13-2, PageID # 299).[7]

Plaintiffs readily admit that they were obligated to provide timely and complete annual certifications to the DOE. SAC at ¶¶ 12, 177 (Doc. 13-2, PageID # 278, 299), and that they did not comply with the annual certification requirement.

For example, Plaintiff Ashley Ford concedes that, in 2014, she submitted an unsigned certification. *Id.* at ¶ 26-31. She further admits that PHEAA alerted her to this error and provided her with new certification paperwork. *Id.* She alleges that she re-submitted her certification "as soon as practical" for her—but she does not and cannot allege that she did so on time. *Id.* The DOE ultimately approved the conversion of her TEACH grant to a loan. *Id.*

---

[7] *See* SAC Ex. A at § (C)(2)(A), (B) (Doc. 13-3, PageID # 331) (Plaintiffs' Agreement To Serve requires them to certify within 120 days of graduation that they are employed and intend to teach in a high-need school, and thereafter to annually certify their progress jointly with their school's chief administrative officer).

Plaintiff David West admits that he "inadvertently left out a signature" on his annual certification.  *Id.* at ¶¶ 94-96.  He further admits that the Principal of his school failed to provide the required third-party verification indicating the "academic year that was being certified."  *Id.*  Plaintiff David West admits that he was informed of these errors, but he does not and cannot allege that he remedied and submitted a complete and timely certification to PHEAA.  *Id.*

The newly-added Plaintiffs similarly admit to their own noncompliance.  Each one failed to submit their annual certification by the deadline, failed to sign their certification, or failed to submit a certification at all.

A few of the Plaintiffs offer a reason for their noncompliance.  They allege that they would have preferred hard-copy reminders from PHEAA rather than online reminders, *id.* at ¶¶ 104, 117, 127, 141; that they did not understand how their certification deadlines corresponded to the end of their school years, *id.* at ¶¶ 89; or that they were out of the country[8] or on maternity leave when the deadline hit.  *Id.* at ¶¶ 27, 30, 111.  But Plaintiffs do not allege that any of these reasons excused their compliance with their Agreement to Serve with the DOE.  SAC Exs. A and B (Docs. 13-3 and 13-4).

Moreover, nothing in PHEAA's Servicing Agreement with the DOE obligated it to remind the Plaintiffs of their certification deadlines, to use a certain method of communication, or to adjust the deadline imposed by the DOE when convenient for the recipient, as suggested in the Second Amended Complaint at ¶¶192 (Doc. 17, PageID #406).   The Plaintiffs admit that

---

[8] Defendant Samantha Binnie has a unique allegation: that an unnamed "FedLoan representative" told her in "May or June of 2015" that she could fill out her certification paperwork a year late.  SAC at ¶¶ 109-10.  Even accepting this vague allegation as true, Defendant Binnie does not argue that this alleged representation superseded or in any way altered her contractual obligations to the DOE.  To the contrary, the Agreement to Serve provides that recipients must request a suspension of their obligations in writing "on a form approved by the Department" in order to avoid conversion.  SAC Ex. A at § (C)(3)(C) (Doc. 13-3, PageID # 318).

they simply failed to submit timely, complete, and duly executed annual certifications to the DOE, as required by their Agreements to Serve.

Irrespective of the merits of the Plaintiffs' claim, the point is this: Each and every allegation arises from duties that were prescribed by the terms of the Agreement to Serve. It thus "regulate[s] the relations of the part[ies] [and] that part of their relations about which issues have arisen" in this lawsuit *LuK*, 2010 U.S. Dist. LEXIS 34734, at *16. The Plaintiffs cannot manufacture equitable claims that are governed entirely by the terms of their written contract.

### b. PHEAA's Servicing Agreement.

PHEAA's Servicing Agreement also forecloses the Plaintiffs' claim for unjust enrichment.

The Plaintiffs' attempt to excuse their failure to timely certify their compliance with the Agreement to Serve arguing that PHEAA imposed "arbitrary deadlines" and seized upon "minute mistakes" that should have been ignored. SAC at ¶ 39, 64 (Doc. 13-2, PageID # 282, 285).

But the Agreement To Serve and the federal regulation expressly state that Plaintiffs' failure to provide the certifications "at least once a year" on the form provided "from the Department" would result in the conversion of their Teach Grants. SAC Ex. B at § C(2)(B), (4)(A) (Doc. 13-4, PageID # 331); 34 CFR § 686.12(b)(2). None of the Plaintiffs allege that they were unaware of this requirement, or that they were unaware of their deadlines. In fact, most Plaintiffs allege that they had properly certified in prior years. SAC at ¶ 184 (Doc. 13-2, PageID # 300).

The consequences for a breach of the certification term are plain and unmistakable. In Ohio, a party to a contract is "entitled to enforce [the terms] to the letter, even to the great discomfort" of the other party. *Ed Story & Sons v. Francis*, 1996-Ohio-194, 75 Ohio St. 3d 433,

443, 662 N.E.2d 1074, 1082.  It is not for a court or anyone else "to decide whether one party ought to have exercised privileges expressly reserved in the document."  *Id.*

As the servicer, PHEAA had no authority to ignore Plaintiffs' mistakes.  PHEAA was under an obligation to the DOE to convert the Grants where the certifications were untimely: "Servicer *will* convert TEACH Grants into Direct Unsubsidized Loans when a Grant recipient . . . fails to certify annually intention to satisfy the service agreement."  (Servicing Agreement at § 4.3.2, 4.3.4) (emphasis added)); 34 C.F.R. § 686.12(e).

Indeed, *Congress* specifically mandated the certification requirement when it established the TEACH Grant program.  20 U.S.C. § 1070g-2(b)(1)(D).  That enabling statute provided that any Agreement To Serve *must* contain a requirement that "the applicant will . . . submit evidence of such employment in the form of a certification by the chief administrative officer of the school upon completion of each year of such service."  *Id.*

Similarly, the Federal Regulations require that recipients *must*, every year, "provide to the Secretary documentation of that teaching service on a form approved by the Secretary and certified by the chief administrative officer of the school in which the grant recipient is teaching."  34 CFR § 686.40(b).  The timely certification of compliance was specifically demanded by Congress; which in turn required enforcement by the DOE; which in turn demanded the same of PHEAA in its Servicing Agreement.

To the extent Plaintiffs intend to argue that their unsigned certifications substantially complied with the Agreement To Serve and should have been accepted by PHEAA, they ignore that a certification must be signed or it is no certification at all.  How could Plaintiffs *certify* that

they are meeting their teaching obligation, or anything else, if they do not sign the form attesting to that fact?[9]

Using a familiar analogy, an affidavit—which is also designed to certify or attest to certain facts—is of no use unless it is signed by the affiant. *Lawson v. Am. Sec. Ins. Co.*, File No. 88-CV-10280-BC, 1989 U.S. Dist. LEXIS 18981, at *8 n.2 (E.D. Mich. Mar. 29, 1989) ("Needless to say, such an affidavit is totally ineffectual.") A lack of signature "is significant and calls into question the reliability of the facts it purports to assert." *Thomas & King, Inc. v. Jaramillo*, No. 08-191-JBC, 2009 U.S. Dist. LEXIS 18432, at *11 (E.D. Ky. Mar. 9, 2009) (declining to consider unsigned affidavit.) Therefore, a "lack of signature is not a technical deficiency"—it renders the document useless. *Id.*

Further, to the extent that Plaintiffs intend to argue that their untimely certification "substantially" complied with their Agreements To Serve and should have been accepted by PHEAA, they ignore that their failure to perform became complete when they missed the contractual deadline. SAC ¶ 190 (Doc. 13-2, PageID # 301).

The failure to meet a contractually-imposed deadline is not substantial performance, as Plaintiffs suggest—it is not compliance at all. *Lake Ridge Acad. v. Carney*, 66 Ohio St. 3d 376, 379, 613 N.E.2d 183, 186 (1993) ("While not precisely the same, this contract is similar to an option contract and a similar approach is appropriate. . . . In an option contract, a party may exercise its option only in the manner provided in the contract. If a time limit is given for exercising an option, the option may not be exercised after that time has passed.")

Because Plaintiffs themselves allege that they failed to satisfy their certification obligations to the DOE, their TEACH Grants were properly converted pursuant to the Agreement

---

[9] Indeed, the Higher Education Act itself establishes numerous criminal penalties for anyone who receives any type of federal student award by providing a "false statement." 20 U.S.C. § 1097.

To Serve.  There has been no breach by anyone—except Plaintiffs.  Conversion of their Grants is the consequence of *their* breach.

The foregoing analysis illustrates the rule this Court applied in *LuK*, 2010 U.S. Dist. LEXIS 34734.  The claims and defenses in this case are completely intertwined with the contractual obligations of each party, including Plaintiffs' failure to perform.  Indeed, is difficult to conceive of a fact pattern in which the contract and quasi-contract claims are more inseparably joined.

For this reason alone, Count III should be dismissed.

### 2.  Enforcement of a contract is not "unjust."

The foregoing analysis supports the second defense to Plaintiffs' claim for unjust enrichment: There is nothing "unjust" about enforcing the terms of a contract.  But that is precisely what Plaintiffs argue here.  As set forth above, Plaintiffs' TEACH Grants were converted to loans pursuant to the terms of their Agreement To Serve.  They repeatedly admit that they were required to provide timely and complete certifications to the DOE, yet they all failed to do so.  SAC at ¶¶ 177 & Exs. A and B (Docs. 13-2, 13-3, 13-4, PageID # 299, 317, 333).

Under the plain and express terms of Plaintiffs' Agreement To Serve, their failure to meet the TEACH Grant requirements triggers the conversion from a Grant to a loan.  SAC Ex. B (Doc. 13-4, PageID # 333); *see also* 20 U.S.C. § 1070g-2(c) (requiring conversion if the recipient fails to satisfy her teaching and certification obligations).

Likewise, PHEAA's Servicing Agreement with the DOE requires it to initiate the conversion if the recipient does not timely submit the required certifications.  (Ex. 1, Servicing Agreement at ¶¶ 3.11.1, 3.11.2, 4.3.4).

Therefore, even assuming that PHEAA gained some benefit as a result of the conversion of their TEACH Grants, it was not "unjustly" gained.  "For the theory of unjust enrichment to apply, there must be some fault on the part of the benefited party."  *JC & F Invs. v. Householder*, 3rd Dist. No. 17-08-11, 2008-Ohio-5313, ¶ 35; *Rose v. Rose*, 6th Dist. Ottawa Court of Appeals No. 90-OT-023, 1991 Ohio App. LEXIS 5911, at *6 (Dec. 13, 1991) ("Another requirement of the doctrine of unjust enrichment is that the 'unjustness' be caused by some fault of the benefitted party.")

Here, because PHEAA is not at fault for Plaintiffs' failure to abide by the requirements of their Agreement To Serve, there is nothing unjust or inequitable about PHEAA carrying out the mandatory terms of its own Servicing Agreement with the DOE.   Although Plaintiffs characterize PHEAA's conversion of their TEACH Grants as "improper[]" and "illegal[]," SAC at ¶ 184 (Doc. 13-2, PageID # 300), these are just "labels and conclusions" that cannot state a claim for relief.  *King*, 2011 U.S. Dist. LEXIS 35610 at *4.  The allegations in the Second Amended Complaint, in conjunction with the terms of both the Agreement To Serve and the Servicing Agreement (as well as the language in the Higher Education Act and the corresponding federal regulation), make clear that all PHEAA did was apply the express and Congressionally-mandated terms of Plaintiffs' contracts.

The conversion of Plaintiffs' Grants was the direct result of Plaintiffs' own breach. There is nothing "unjust" about enforcing the terms of a contract.

### 3.    PHEAA was not "enriched" by Plaintiffs.

Plaintiffs' unjust enrichment claim fails for a third reason:  They allege no "benefit conferred *by a plaintiff* upon a defendant."  *Hambleton,* 12 Ohio St. 3d at 183 (emphasis added).

"'As ordinarily defined, the concept of unjust enrichment includes not only a gain on one side but loss on the other, with a tie of causation between the two.'"  *Shona Corp. v. AMKO*

*Internat'l.*, 763 F. Supp. 919, 945 (S.D. Ohio 1991), quoting 18 Ohio Jur.3d *Contracts* § 343, at 271.  Where there is an indirect connection between a plaintiff's loss and a defendant's alleged gain, the causal connection is too remote to support the claim.  *Shona*, 763 F. Supp. at 946.

Here, Plaintiffs did not confer anything upon PHEAA.  According to Plaintiffs' allegations, PHEAA was enriched (if at all) by the DOE, not by them.  Specifically, Plaintiffs allege that PHEAA is "compensated by receiving a percentage of the unpaid balances of the loans" it services for the DOE.  SAC at ¶ 185 (Doc. 13-2, PageID # 301).  Therefore, they conclude, PHEAA must have received "increased profits based on increased outstanding loan balances."  *Id*. at ¶ 255 (Doc. 13-2, PageID # 311).

Even accepting this allegation as true, PHEAA's compensation is purely a matter of contract with the DOE—it has nothing to do with Plaintiffs.  Whether the *DOE* paid PHEAA more to service converted Grants is irrelevant, especially where the ultimate decision of whether to convert a grant to loan rested with the DOE.  Plaintiffs do not and cannot allege that *they* conferred a benefit upon PHEAA and, for this reason alone, their claim for unjust enrichment must fail.

Count III should be dismissed.

**B.      Plaintiffs Fail To Plead Civil RICO (Count I).**

Plaintiffs bring a surprising cause of action in this case.  They claim that in performing its contractual duties as a servicer for the DOE, PHEAA violated the Racketeer Influenced and Corrupt Organizations Act ("RICO").  Plaintiffs assert that PHEAA and the DOE are the "RICO enterprise" and that PHEAA is the "culpable person."  SAC at ¶¶ 220, 223 (Doc. 13-2, PageID # 307).  They also allege that PHEAA utilized the U.S. Mail and interstate wires in its alleged "illegal conversion" scheme.  *Id.* at ¶¶ 231, 234 (PageID # 308).  What makes this claim truly bizarre is that it is not asserted against the DOE—just against PHEAA!

Despite pleading this claim three times, and despite two prior motions setting forth the problems with this claim, the same problems remain, each of which is fatal.

The first is Plaintiffs' complete failure to meet even the most rudimentary pleading requirements of Civil Rule 8. The second is their failure to allege the existence of a predicate act—or any element—in support their RICO claim. The third is that PHEAA cannot be a "culpable person" associated with the DOE enterprise because there are no allegations that PHEAA participates in the *management* decisions for the DOE itself.

### 1.      Plaintiffs fail to satisfy their pleading obligation.

As this Court recently explained, in order to demonstrate a RICO violation under 18 U.S.C. § 1962(c), "a plaintiff must establish the following elements: (1) the existence of two or more predicate offenses; (2) the existence of an 'enterprise;' (3) a nexus between the pattern of racketeering and the enterprise; and (4) an injury to business or property occurring as a result of the racketeering activity." *Kovach v. Access Midstream Partners, L.P.,* No. 5:15-cv-616, 2016 U.S. Dist. LEXIS 37882, at *23 (N.D. Ohio Mar. 23, 2016). A plaintiff must also meet the so-called "managerial requirement" for each defendant, showing that the individual defendant "participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 183, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993).

Here, PHEAA and the DOE are the alleged "enterprise." SAC at 220 (Doc. 13-2, PageID # 307). And PHEAA, an allegedly "culpable person" associated with the enterprise, allegedly engaged in racketeering predicate offense of "mail fraud" and "wire fraud" in violation of 18 U.S.C. §§ 1341 and 1343. *Id.* at ¶ 228.

"The elements of the offense of mail fraud under 18 U.S.C. § 1341 are (1) a scheme to defraud, and (2) the mailing of a letter or some equivalent for the purpose of executing the scheme." *Morda v. Klein*, 865 F.2d 782, 785 (6th Cir. 1989).

"The 'scheme to defraud' further includes within it the element of specific criminal intent." *Id.*

Finally, the plaintiff must establish that the alleged misrepresentation "was the cause (both 'but for' and proximate) of her injury." *Grange Mut. Cas. Co. v. Mack*, 290 F. App'x 832, 835 (6th Cir. 2008).

The elements of wire fraud are essentially the same, except that the defendant must use the interstate wire service instead of the mail. *United States v. Prince*, 214 F.3d 740, 748 (6th Cir. 2000). *See also Hofstetter v. Fletcher*, 905 F.2d 897, 902 (6th Cir. 1988) ("This court has held that the wire fraud statutory language should be interpreted with the same breadth as the analogous language in the mail fraud statute.")

Finally, because plaintiffs' RICO claims require proof of mail or wire fraud as an element, "the plaintiffs must . . . satisfy the heightened particularity requirements of Federal Rule of Civil Procedure 9(b) with respect to the elements of fraud." *Deel v. Wells Fargo Bank, N.A.*, No. 5:15-cv-2042, 2016 U.S. Dist. LEXIS 44651, at *9 (N.D. Ohio Apr. 1, 2016) (quotations omitted).

The RICO Count here is nothing more than a collection of rote recitals of the elements of the claim that are devoid of any factual content. A court "need not accept a complaint's allegations as true based on threadbare recitations of a cause of action's elements, supported by mere conclusory statements." *Michalak*, 2104 U.S. Dist. LEXIS 57718, at *3. The Second Amended Complaint fails to satisfy even the most minimal of pleading requirements.

For example, Plaintiffs recite that "PHEAA, and not the [DOE], is the 'culpable person,'" and that PHEAA "did conduct and participate in the conduct" of the DOE's affairs through a pattern of racketeering activity. SAC ¶¶ 223, 225 (Doc. 13-2, PageID # 307-08).

But there is not a single allegation of fact offered to support either contention. Moreover, and as set forth in more detail below, (see *infra* at 24-25), the allegation that PHEAA is the "culpable person" is directly contradicted by the terms of the contracts Plaintiffs themselves are relying on. Where there is a conflict between the allegations in a complaint and the terms of controlling contracts, the contracts prevail. *Carrier Corp. v. Outokumpu Copper Franklin, Inc.*, 673 F.3d 430, 431 (6th Cir. 2012). This is especially true "[w]hen an exhibit is a contract, [because] it is reasonable to consider the entire document because the contract has independent legal significance." *Id.* at 443.

In addition, Plaintiffs allege that PHEAA engaged in mail and wire fraud as predicate acts in support of their RICO clam. But they offer no facts to support this allegation either. Instead, they resort to "labels and conclusions," arguing that PHEAA "fraudulently converted" Plaintiffs' TEACH Grants to interest-bearing loans. SAC at ¶¶ 235 (Doc. 13-2, PageID # 308). But the allegation is directly contradicted by Plaintiffs' own allegations that they breached the terms of their Agreements To Serve. What's more, as set forth below, a breach of contract cannot support RICO claim.

These defects alone are enough to warrant dismissal of Count I.

**2. A mere breach of contract cannot constitute mail or wire fraud.**

Plaintiffs' next problem is equally insurmountable: A mere breach of contract can never provide the basis for the predicate acts of mail or wire fraud.

Plaintiffs claim that the DOE, through its servicer PHEAA, improperly converted their TEACH Grants in violation of their Agreements To Serve, constituting the federal crimes of mail and wire fraud. SAC at ¶¶ 233, 235, 150 (Doc. 13-2, PageID # 308). As set forth above, Plaintiffs failed to allege a valid claim for breach of contract against anyone, far less against

PHEAA. Without a breach of the Agreement to Serve, there is simply no wrongful conduct to support the predicate acts of mail or wire fraud.

Even assuming that PHEAA was a party to the Agreement To Serve, and further assuming that PHEAA had some obligations to Plaintiffs under those contracts, and even further assuming that PHEAA breached those obligations, Plaintiffs *still* fail to plead wire or mail fraud.

A breach of contract is just that—a contract claim. It cannot support a fraud-based claim. *Gator Dev. Corp. v. VHH, Ltd.*, 5th Dist. Hamilton No. C-080193, 2009-Ohio-1802, ¶ 18 (Affirming dismissal of a claim for "fraudulent breach of a contract," which is not recognized as a tort in Ohio). Breaches of contracts, even if they are part of "some illegal schemes perpetrated using the mails and wires are not violations of the federal wire and mail fraud statutes." *Hilton Sea, Inc. v. DMR Yachts, Inc*., 750 F. Supp. 35, 39 (D. Me. 1990).

Therefore, courts in the Sixth Circuit are clear that plaintiffs cannot "transmute claims sounding in contract into RICO claims by simply appending the terms 'false' and 'fraudulent.'" *Kevelighan v. Trott & Trott, P.C.*, 771 F. Supp. 2d 763, 777 (E.D. Mich. 2010) (citation omitted) (dismissing RICO mail fraud claims that "primarily sound in contract."); *see also Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152-53 (6th Cir. 1987) ("Sending a financial statement which misconstrues the prime rate provided by the terms of the contract may breach the contract but it does not amount to a RICO mail fraud cause of action."); *C & L Ward Bros. v. Outsource Solutions, Inc.*, 2012 U.S. Dist. LEXIS 109068, **15-16 (E.D. Mich. August, 2012) (dismissing RICO mail fraud claim based on the submission of improper billings that violated the parties' contract.)

This result makes sense. Otherwise, virtually every ordinary breach of contract would double as mail or wire fraud and trigger a federal RICO claim. *Hilton Sea, Inc.*, 750 F. Supp. at

39 ("A failure to perform as promised does not, without more, constitute fraud. If the opposite were true, every breach of contract would present a colorable claim for fraud and, perhaps, a RICO violation.")

PHEAA pointed this out to Plaintiffs in its Motion to Dismiss the original Complaint and in its Motion to Dismiss the Amended Complaint. Motion to Dismiss at 17-19 (Doc. 6, PageID # 106-08); Motion to Dismiss Am. Compl. at 19-21 (Doc. 12, Page ID # 251-53). Plaintiffs' continuing assertion of this theory confirms that there is simply no set of circumstances under which they will ever be able to state a RICO claim.

### 3.    PHEAA did not participate in or manage the DOE's conduct.

Plaintiffs have another insurmountable problem. In order for PHEAA to be a "culpable person" associated with the DOE's alleged "RICO enterprise," as Plaintiffs now allege, SAC at ¶¶ 223, 225 (Doc. 13-2, PageID # 307-08), PHEAA must have participated *in the management of the DOE itself*. *Reves v. Ernst & Young*, 507 U.S. 170, 183, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993) (explaining that RICO liability requires a higher standard than just normal aiding and abetting.)

For purposes of RICO, "liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." *Id.* at 185. The culpable person must be "'associated with' an enterprise and participate in the conduct of its affairs – *that is, participate in the operation or management of the enterprise itself.*" *Id.* (emphasis added).

In short, the defendant must not only be associated with the enterprise, it must have a "part in directing its affairs." *Stone v. Kirk*, 8 F.3d 1079, 1092 (6th Cir.1993).

Here, there are no allegations in the Second Amended Complaint that PHEAA was even able to direct the affairs of the DOE itself, and thus direct the enterprise, much less that it did so.

*See generally*, SAC (Doc. 13-2).  Quite the opposite, as Plaintiffs allege, PHEAA was subject to a DOE Servicing Agreement that directed even its own performance.  *Id.* at ¶¶ 3, 180; *see also* Servicing Agreement (Ex. 1).

For example, PHEAA was required *by the DOE* to convert TEACH Grants where a recipient failed to timely submit the annual certification forms.  SAC Ex. A (Doc. 13-3); Servicing Agreement at ¶¶ 3.11.1, 3.11.2, 4.3.4.  And the DOE—not PHEAA—had the final say over the efficacy of the converted Grants.  GAO-15-314, at 31 (cited in the SAC at page 28, n. 14) (Doc. 13-2, PageID # 301).  Indeed, as a servicer, PHEAA is subordinate in literally each and every aspect of its relationship with the DOE.

It is more than merely implausible to suggest that PHEAA directs the management affairs of the DOE.  It is a contractual impossibility.  If anything, PHEAA's operations were directed by the DOE—not the other way around.

Count III should be dismissed.

## V.     CONCLUSION

For the reasons set forth above, Plaintiffs' Second Amended Complaint should be dismissed in its entirety with prejudice.

Respectfully submitted,

*/s/ Drew H. Campbell*

Drew H. Campbell    (Ohio # 0047197)
David K. Stein      (Ohio # 0042290)
Kara Herrnstein     (Ohio # 0088529)
Bricker & Eckler LLP
100 S. Third Street
Columbus, Ohio 43215
Telephone: 614-227-2300
Fax: 614-227-2390
dcampbell@bricker.com
dstein@bricker.com
kherrnstein@bricker.com
*Counsel for Defendant Pennsylvania Higher*
*Education Assistance Agency*

## CERTIFICATE OF COMPLIANCE

I certify that this case is set on a standard track and that this filing meets the page limitations set forth in Local Rule 7.1.

*/s/ Drew H. Campbell*
Drew H. Campbell (0047197)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing document was filed with the Clerk of Courts using the ECF system, which will send notification of such filing to all attorneys of record on this 2nd day of June, 2017.

*/s/ Drew H. Campbell*
Drew H. Campbell (0047197)